[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
David Goodrich and Sheldon Parker brought this shareholder derivative suit against the corporation, Geopax, Ltd. (Geopax) and five of its directors, Robeli Libero, Michael Hurwitz, Roger Jester, Nels Jensen and John Burdick, alleging that the directors breached their fiduciary duties to the corporation and to the minority shareholders and were grossly negligent in managing the corporation. Goodrich, a director and shareholder of Geopax, co-founded the corporation with the defendant Hurwitz, and, at one time, served as Geopax' chief operating officer, secretary and treasurer. Parker is a director and shareholder, serves as patent counsel for Goodrich and formerly served as patent counsel for the defendants Geopax, Hurwitz and Jester. Geopax is a closely-held corporation incorporated under the laws of Delaware and registered to do business in Connecticut, with its principal place of business in Sandy Hook, Connecticut.
In their complaint, the plaintiffs allege that Libero initiated a plan to take control of Geopax, among other ways, by deepening a pre-existing division between Goodrich and Hurwitz and by manipulating Hurwitz to join with him and Jester in forming a majority (or control) block of the corporation's shareholders. Specifically, they allege that in 1995, Libero agreed to have the corporation pay for personal expenses that Hurwitz had charged to Geopax, such as a premium on a life insurance policy and an automobile expense, and gave Hurwitz control over corporate sales. Further, Libero caused Jester to be elevated to the role of managing director. The plaintiffs claim that the defendants misused their new roles, in that Hurwitz engaged in sales activities which eventually caused customers to stop doing business with Geopax, and Jester dismissed Goodrich's father from the position of product manager.
In 1996, Libero and Hurwitz passed a resolution appointing Jester, Jensen and Burdick directors of the corporation. Thereafter, the plaintiffs assert that the defendants changed the office locks and the computer codes and transferred all corporate funds to a bank account for which Goodrich had no authorization to sign checks. Moreover, at an April 5, 1996 board meeting, the CT Page 5903 defendants voted to terminate Goodrich, with the plaintiffs voting against such action. At the same meeting, Goodrich received permission to present a financing package he had arranged, which included a $1.3 million investment in exchange for 1,713 shares of common stock based on a $10 million valuation of the corporation.
On April 8, 1996, a telephonic board meeting was held at which Libero presented a financial package. The package called for Libero to provide $500,000 to Geopax in exchange for 37.5 percent of the total capital shares of Geopax, based on a $4 million valuation of the corporation, and granting Libero the opportunity to deny funding for any payment he questioned or opposed. The board approved Libero's plan, four to two (with Libero abstaining and the plaintiffs opposing) without any further discussion of Goodrich's financial plan. The plaintiffs allege that the adoption of this financial plan has damaged the corporation in that Geopax is currently insolvent and is not meeting contractual commitments, Geopax is wasting corporate assets by delaying and hindering patent applications, sales and revenues have declined, no research and development has been undertaken, and the value of Geopax stock has been depressed.
The plaintiffs also claim that the defendant directors have attempted to "squeeze out" the plaintiffs by refusing to pay them wages and expenses, and by retaining new counsel to review foreign patent applications. The plaintiffs allege that by all these actions, the defendants wilfully and recklessly breached their fiduciary duty to Geopax and the other shareholders.
Furthermore, the plaintiffs allege that the defendants' actions were unfair and were not taken in good faith or with the honest belief that they served the best interests of the corporation. The plaintiffs assert that the individual defendants did not act in a disinterested manner or with due care, but instead acted in bad faith for the deliberate purpose of securing Libero's control of Geopax and entrenching themselves as directors and abused their discretion by acting in a manner outside the boundaries of reasonable judgment and discretion to advance their own personal interests. Specifically, they claim that Libero acted to take control of Geopax for his own financial benefit; that Hurwitz acted to secure the corporation's payment of certain personal expenses; that Jester and Jensen are friends of Libero's and acted to maintain their positions as directors; that Burdick acted to secure a position as financial consultant CT Page 5904 to the corporation, with the corresponding financial benefit; and that Burdick, Hurwitz, Jester and Jensen are dominated and controlled by Libero. Consequently, the plaintiffs claim to be excused from demanding that the board pursue the present action, as such demand would be futile.
The remedies the plaintiffs seek, inter alia, are payment to the corporation of all moneys improperly disbursed to Hurwitz; removal of Jester, Jensen and Burdick from their positions as directors; invalidation of Libero's financial plan; adoption of Goodrich's financial plan, or one comparable thereto; enforcement of a contract with Goodrich entitled the "Technology License Agreement"; reinstatement of Goodrich and his father to their former positions; payment to Geopax of damages for corporate waste and improper conduct; punitive damages; costs and attorney's fees.
The defendants have moved to dismiss the complaint arguing, first, that the plaintiffs lack standing to bring the action because they do not fairly or adequately represent the interests of the class of shareholders they seek to represent, and, second, that they failed to make a demand upon the board of directors or to sufficiently allege that such a demand would be futile. In connection with their motion to dismiss, the defendants have filed three memoranda of law and a copy of a complaint in an earlier action brought by Goodrich on behalf of himself against Geopax, Libero and Hurwitz. In the earlier action, Goodrich sought to have terminated the Technology License Agreement which Goodrich claimed the defendants had breached and also sought payment of royalties for his inventions. In opposition to the defendants' motion to dismiss in the present action, the plaintiffs have filed two memoranda of law.
"[T]he court, in deciding a motion to dismiss, must consider the allegations of the complaint in their most favorable light. . . ." (Internal quotation marks omitted.) Savage v.Aronson, 214 Conn. 256, 264 (1990). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Citations omitted; internal quotation marks omitted.) Barde v. Board of Trustees,207 Conn. 59, 62 (1988).
"A shareholder's derivative suit is an equitable action by the corporation as the real party in interest with a stockholder as a nominal plaintiff representing the corporation. . . . [T]he CT Page 5905 defendants in a derivative action may properly question whether the plaintiff has standing in equity to act as the nominal shareholder acting on behalf of the corporation and the other shareholders." (Citations omitted; internal quotation marks omitted.) Barrett v. Southern Connecticut Gas Co., 172 Conn. 362,370 (1977). "Because in the absence of standing the court lacks subject matter jurisdiction to determine the merits of the case . . . the correct form of judgment is to dismiss the action." Sadloski v. Manchester, 235 Conn. 637, 650 (1995).
Section 52-572j (a) of the General Statutes requires a nominal plaintiff to "fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation. . . ." Our Supreme Court has held that this statute "requires fair and adequate representation in order to avoid possible antagonism between the interests of the representative and those of the class, antagonism which may lead to conflicts such that the interests of the other stockholders are disregarded in the management of the case." Fink v. Golenbock, 238 Conn. 183, 204 (1996), citingBarrett v. Southern Connecticut Gas Co., supra, 374.
To determine whether a plaintiff has met the requirements of § 52-572j (a), the Court in Fink adopted an eight factor approach applied by the United States Court of Appeals for the Ninth Circuit.[1] Fink v. Golenbock, supra, 238 Conn. 205. The eight factors are: "(1) whether the named plaintiff is the real party in interest; (2) the plaintiff's familiarity with the litigation and willingness to learn about the suit; (3) the degree of control exercised by attorneys over the litigation; (4) the degree of support given to the plaintiff by the other shareholders; (5) the plaintiff's personal commitment to the action; (6) the remedies sought by the plaintiff; (7) the relative magnitude of the plaintiff's personal interests as compared to the plaintiff's interest in the derivative action itself; and (8) the plaintiff's indictiveness toward the other shareholders. . . . Not all factors will come into play in all cases, and in some cases there may be additional factors for the court to consider." (Citations omitted.) Fink v. Golenbock,supra, 205-06.
"The key is whether the nominal plaintiff's . . . interests and issues [are] coextensive with those of the class of shareholders he seeks to represent, and whether he is able to assure the trial court that as a representative, he will put up a CT Page 5906 real fight." (Internal quotation marks omitted.) "Whether a plaintiff is an appropriate representative is fact-specific and depends upon any number of factors." Fink v. Golenbock, supra.
The defendants argue that Goodrich lacks standing because the earlier, personal suit that Goodrich brought creates "an irreconcilable conflict that prevents him from acting on behalf of Geopax" in the present action. The defendants rely on Barrettv. Southern Connecticut Gas Co., supra, for the proposition that, by seeking damages in the personal action, Goodrich could potentially harm the equity of the corporation, thereby harming the interests of the shareholders he seeks to represent in the present action. Moreover, because the personal action seeks to terminate an agreement, the Technology License Agreement, that the derivative action seeks to enforce, the defendants argue that the personal action is in direct conflict with the derivative action. The defendants also note that much of the activity in dispute in the present action arises out of Goodrich's own personal entanglements with the defendants, giving Goodrich too much of a personal interest in the derivative Suit for him to adequately represent the other shareholders.
In response, the plaintiffs argue that "by reason of [his] substantial shareholder interests, [his] status as director, [his] strong past and future commitment to Geopax and its shareholders, and the personal losses [he] will suffer if this action proves unsuccessful, Goodrich . . . can be counted on to fairly and adequately represent the interests of Geopax' shareholders by . . . vigorously prosecuting this action." The plaintiffs address each of the Fink factors, arguing that each weighs in favor of finding that Goodrich can fairly and adequately represent the corporation, specifically noting that the remedies sought in the derivative action would benefit the corporation, and that, as a major shareholder in the corporation,[2] Goodrich has good reason to faithfully prosecute the action. Goodrich distinguishes the present action from Barrett by noting that because the present action does not arise out of precisely the same dispute as the individual action, the present action does not amount to a personal dispute between Goodrich and the defendants. Moreover, Goodrich argues thatBarrett relied on the fact that the plaintiff's interest in the derivative litigation was small compared with his interest in the personal action. By contrast, Goodrich claims that his interest in the present action is greater than that in his earlier action, and that, therefore, the interests of the other stockholders will CT Page 5907 not be disregarded in the management of this suit.
In Barrett v. Southern Connecticut Gas Co., supra, 362, the nominal plaintiff had also brought an individual action against the corporation prior to bringing the derivative action. The Supreme Court found that the damages the plaintiff seeks in his individual action will adversely affect the equity interest of the same shareholders he purports to represent in the derivative action and consequently held that the plaintiff lacked standing. The Court also found a conflict based on the fact that the plaintiff's individual action and the derivative suit arose out of the same dispute, stating that it found that the trial court reasonably could conclude that Barrett's good faith averments were insufficient assurance that he would provide fair and adequate representation devoid of personal considerations. It continued that where a conflict exists, the standard is "potential for abuse" and whether the nominal plaintiff is free of any interest which holds the potential of influencing his conduct in a manner inconsistent with the interests of the other shareholders.
In the present action, Goodrich has not met the standard of showing that he is free from any interest which may be inconsistent with the interests of Geopax and the other shareholders. Goodrich's personal action seeks damages against the corporation, which, as in Barrett, has the potential for damaging the corporation's equity. Moreover, the personal action seeks the termination of an agreement, the Technology License Agreement, which the derivative suit seeks to enforce, and which the plaintiffs have asserted is in the best interests of the corporation to have enforced. Such remedies are inherently inconsistent. In addition, in the derivative action itself, Goodrich seeks remedies that would seem to benefit himself more than Geopax; specifically, Goodrich seeks to have himself and his father reinstated in their former positions as employees of the company. This fact, coupled with the history of personal dispute between Goodrich and the defendants, provides too much of an opportunity for the derivative suit process to be abused. As inBarrett, Goodrich's good faith averments are insufficient to overcome this impediment.
While certain of the Fink factors could weigh in favor of allowing Goodrich to represent Geopax, such as his familiarity with the suit and his personal commitment to the action, others weigh against Goodrich, such as the personal nature of the CT Page 5908 remedies he seeks and his apparent hostility towards the defendants. However, these factors "are nonexclusive and interrelated," and the key is whether Goodrich's interests are coextensive with the class of shareholders he seeks to represent and whether he will "put up a real fight." (Internal quotation marks omitted.) Fink v. Golenbock, supra. Since Goodrich seeks personal as well as corporate remedies, and because he seeks inconsistent remedies in the individual action, his interests are not even coextensive with those of the other plaintiff, Parker. Therefore, the court finds that Goodrich lacks standing to fairly and adequately represent the other shareholders.
The defendants argue that Parker "has several fundamental conflicts of interest, each of which unequivocally disqualify him from acting as a plaintiff" in the derivative action. Specifically, the defendants note that Parker's role as patent counsel to Goodrich, Hurwitz, Jester and Geopax confers on Parker ethical obligations to act in his clients' interests, and argue that his serving as plaintiff to this action violates the Rules of Professional Conduct. The defendants also claim that Parker and Geopax are currently in a dispute over Parker's wages and that Parker stands to benefit from Goodrich's personal action because he has an agreement to receive a portion of Goodrich's royalties.
The plaintiffs argue that Parker is not acting as counsel of record in the present action, but is appearing in his capacity as a shareholder of Geopax, asserting his shareholder rights. As such, "this is not a case of any attorney (acting as such) suing his clients, as defendants seek to portray." The plaintiff also argues that the dispute over Parker's wages is an attempt by the defendant to create a conflict. Furthermore, the plaintiff asserts that any agreement between Parker and Goodrich as to royalties would apply only if the Technology License Agreement were enforced through the derivative suit, and that Parker would thus derive no benefit from the plaintiff's personal action.
The Court's independent research has located no case directly paralleling the present situation, where an attorney who has represented a corporation now seeks to assert his shareholder rights as a plaintiff in a derivative action.[3] While the defendants have cited cases where a corporation's attorney was prevented from serving as the attorney of record in a derivative action, such cases are inherently different from the present one. An attorney of record in a derivative action stands to benefit CT Page 5909 personally from such action, through costs and fees, and therefore has an interest which may run counter to that of the corporation. An attorney who only acts as a plaintiff, however, and who is not improperly seeking personal benefit, would have no such conflicting interest.
The defendants have asserted that Parker has conflicts with the derivative action that would give him an improper personal benefit, namely, that Parker is engaged in a wage dispute with Geopax, and that he stands to benefit from Goodrich's personal action because of an agreement whereby Parker would receive some of Goodrich's royalties. No evidence, in the form of affidavits, written documents or letters, has been provided with regard to either of these alleged conflicts. Moreover, the parties disagree as to the exact nature of any royalty agreement Parker and Goodrich may have made and as to the form any wage dispute has taken. As such, the Court cannot consider either of these conflicts in making a determination as to Parker's standing.
The only remaining issue as to Parker then, is the propriety of allowing him to exercise his shareholder rights as a plaintiff in a derivative suit when he has previously acted as counsel to the plaintiff and to the defendants. The defendants argue vociferously that to allow Parker to bring this derivative action would be a breach of Parker's ethical obligations to his clients and a violation Rules 1.7(a) and 1.8(a) and (b) of the Rules of Professional Conduct. However, the preamble to the Rules of Professional Conduct provides, in pertinent part:
 Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process . . . Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers. . . . CT Page 5910
Therefore, the defendants have no right to assert the Rules of Professional Conduct. Moreover, the categorical denial of Parker's rights as a shareholder because of his representation of the parties in matters which may or may not be related to the present action would have due process implications. Such a step should not be taken without direct authority to do so.
In the present action, Parker meets the Fink standard. It does not appear that Parker is the real party in interest; Parker, as a director of the corporation, has good reason to be familiar with and personally committed to the litigation; the remedies sought do not benefit Parker personally; whatever personal interest Parker may have is outweighed by the benefit to the corporation; and no real level of vindictiveness towards the defendants has been shown. Moreover, unlike Goodrich, Parker's interests correspond with those of shareholders in general, and, as such, Parker is more likely to faithfully prosecute this action. Therefore, the court finds that Parker has standing.
The defendants have also moved to dismiss this action on the ground that the plaintiffs failed to make demand upon the Board prior to suit or to allege with factual particularity why demand is excused under Rule 23.1 of the Rules of the Delaware Chancery Court and Aronson v. Lewis, 473 A.2d 805 (Del. 1984).[4]
Rule 23.1 requires plaintiffs in a shareholder derivative action to make a demand for redress on the board prior to suit, or to allege with particularity why such a demand would be futile. SeeAronson v. Lewis, supra, 811-12.[5]
"The rationale for making a demand or, alternatively, offering a sufficient explanation for failure to make a demand, derives from the principle that the management of a corporation is entrusted to its board of directors who are responsible for acting in the name of the corporation and who are often in a position to correct the alleged wrongful acts without resorting to the courts." RCM Securities Fund. Inc. v. Stanton,928 F.2d 1318, 1326 (2d Cir. 1991). "[D]emand can only be excused where facts are alleged with particularity which create a reasonable doubt that the directors' action was entitled to the protections of the business judgment rule." Aronson v. Lewis, supra, 808. Demand futility is gauged by the circumstances existing at the commencement of the derivative suit.
"In determining demand futility the [trial court] . . . must CT Page 5911 decide whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." Aronson v. Lewis, 473 A.2d 805, 814 (Del. 1988). "If a derivative plaintiff can demonstrate a reasonable doubt as to the first or second prong of the Aronson test, then he has demonstrated that demand would have been futile." Seminaris v.Landa, 662 A.2d 1350, 1354 (Del. 1995). Determining demand futility under the Aronson test involves a "highly factual . . . inquiry. . . . Reasonable doubt must be decided by the trial court on a case-by-case basis. . . ." Grobow v. Perot,539 A.2d 180, 186 (Del. 1988).
"[I]n order to satisfy Aronson's first prong involving director disinterest . . . [the] plaintiffs must plead particularized facts demonstrating either a financial interest or entrenchment on the part of the . . . directors." Grobow v.Perot, supra, 188. "Directorial interest exists whenever divided loyalties are present, or a director either has received, or is entitled to receive, a personal financial benefit from the challenged transaction which is not equally shared by the shareholders." Pogostin v. Rice, 480 A.2d 619, 624 (Del. 1984). Entrenchment may be shown by pleading facts which demonstrate that the challenged transaction "was motivated [by] and reasonably related to the directors' retention of their positions on the Board." Grobow v. Perot, supra, 188.
In addition to director disinterest, "a derivative complaint must also raise reasonable doubt of director independence. This would require plaintiffs to allege with particularity that the . . . directors were dominated or otherwise controlled by an individual or entity interested in the transaction." Grobow v.Perot, supra, 189. "Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." Aronson v.Lewis, supra, 816. "The shorthand shibboleth of `dominated and controlled directors' is insufficient." "There must be coupled with the allegation of control such facts as would demonstrate that through personal or other relationships the directors are beholden to the controlling person." "[W]e stress that the plaintiff need only allege specific facts; he need not plead evidence." Aronson v. Lewis, supra, 815-16.
The allegations of the complaint, taken as true, adequately CT Page 5912 demonstrate that a majority of the board of directors of Geopax was motivated either by financial interest or entrenchment, and were dominated or otherwise controlled by an individual interested in the transaction. As to Libero, the complaint alleges that he acted in his own self-interest by voting for a financial plan which would give him 37.5 percent of the total capital shares of Geopax stock, based on a $4 million valuation of the company, and total authority over all spending decisions of the corporation. Moreover, according to the complaint, Libero "has purposely depressed the value of the corporation to the financial detriment of its minority shareholders," and has attempted to squeeze out dissenting directors and shareholders (Parker and Goodrich) by eliminating their positions and cutting off their pay "in order to further his scheme to take over control of Geopax." Finally, the complaint alleges that Libero, along with Hurwitz, improperly added three new directors to the board by passing a resolution, in a document entitled "Action By Written Consent of the Stockholders in Lieu of Meeting," without first consulting either Goodrich or Parker.
As to Hurwitz, the complaint alleges that Hurwitz received from Libero payment for personal expenses, plus additional cash, in return for Hurwitz' promise of loyalty to Libero. With regard to Jester, Jensen and Burdick, the complaint alleges that all three directors were appointed by Libero and Hurwitz, rather than elected by the shareholders. Moreover, it is alleged that Jester and Jensen were personal friends of Libero, that Burdick acted in the interests of securing a position with the corporation he could not have otherwise secured, and that all three voted along with Libero to approve each of the transactions that are alleged to have been corporate waste, including the financial transaction that gave Libero a greater percentage of stock ownership at a decreased valuation of the corporation and other transactions which were adverse to Geopax' technology and patent rights.
"In making the required judgment no single factor — such as receipt of directorial compensation; family or social relationships; approval of the transaction attacked; or other relationships with the corporation (e.g., attorney or banker) — may itself be dispositive in any particular case. Rather the question is whether the accumulation of all factors creates the reasonable doubt to which Aronson refers." Harris v. Carter,582 A.2d 222, 229 (Del.Ch. 1990). The totality of facts alleged with particularity in the complaint create a reasonable doubt as to the disinterest and independence of a majority of the board of CT Page 5913 directors of Geopax.
Therefore, the burden of showing the futility of demand has been met, and, as such, the defendants' motion to dismiss is, accordingly, denied.
MORAGHAN, J.